IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:14-CV-212-FL

JOHNNIE GREEN,                          )
                                        )
        Plaintiff/Claimant,             )
                                        )
                                        )        **MEMORANDUM AND**
              v.                        )        **RECOMMENDATION**
                                        )
CAROLYN W. COLVIN, Acting               )
Commissioner of Social Security,        )
                                        )
        Defendant.                      )

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, DE-23] pursuant to Fed. R. Civ. P. 12(c). Claimant Johnnie Green ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on October 1, 2010, alleging disability beginning March 22, 2005. (R. 195-98). His claim was denied initially and upon reconsideration. (R. 95-120). A hearing before the Administrative Law Judge ("ALJ") was held on February 8, 2013, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 35-69). On May 17, 2013, the ALJ issued a decision denying

Claimant's request for benefits. (R. 13-34). On July 18, 2014, the Appeals Council granted

Claimant's request for review. (R. 191-94). On September 9, 2014, the Appeals Council issued a

decision adopting the ALJ's findings and conclusions from steps one through five of the sequential

evaluation, and clarifying that the period at issue was from September 10, 2008 until December 31,

2010. (R. 1-7). Claimant then filed a complaint in this court seeking review of the now-final

administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the

Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial

evidence supports the Commissioner's factual findings and whether the decision was reached

through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th

Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial

evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which

a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*,

368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount

of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . .

. and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial

evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270

F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded

by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial

evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence

2

and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In the present case, Claimant argues that the ALJ erred in weighing the medical opinion evidence and in analyzing Claimant's credibility. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s

3

Mem.") [DE-20] at 9-18.

## IV. FACTUAL HISTORY

### A.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: fibromyalgia, chronic pain syndrome, obesity, depression, and an anxiety disorder. (R. 19). The ALJ also found Claimant had a nonsevere impairment of hypertension. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in his activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation. (R. 20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations: able to stand, walk, and sit for six hours of an eight-hour workday, except Claimant was limited to occasional postural movements; able to understand, remember, and carry out short simple instructions two hours at a time, eight hours a day;

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

required low-stress, non-production, non-assembly rate work; requires work not performed in close proximity to coworkers (meaning Claimant could not function as a member of a team); and requires work that is not performed in direct contact with the public (any contact with the public is incidental and not a primary factor in performing the job). (R. 21). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 23-28).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a children's institution attendant, teacher's aide, and program director. (R. 28-29). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 29-30).

## B.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 48 years old, unemployed and living with his brother in a mobile home. (R. 41-43). Claimant has lived with his brother since late 2010. (R. 43). Claimant is a high school graduate and completed two years of college. (R. 44). Claimant currently receives $600 per month in long-term disability benefits, which he began receiving in June of 2006, and also has received $190 in food stamps since 2008. (R. 43-44). Claimant testified that he pays for his medical care with the assistance of his family. (R. 44).

Claimant last worked as a youth program assistant from 1994 to 2005, where his duties included monitoring and documenting client behavior, structuring and running group meetings, giving input for students' treatment plans, and role modeling appropriate behavior. (R. 45). Claimant moved into a Youth Program Assistant II position, where he took on the occasional responsibility of supervising other Youth Program Assistants, and transported students to meetings

5

or outings. *Id.* Claimant also became a Shift Supervisor and a Teacher's Assistant. *Id.* Claimant testified that he was mostly standing during the day at that job, and occasionally had to physically restrain students when they became a danger to themselves or others. (R. 45-46). Claimant left that job because he was unable to physically perform the duties that were required, and had continued absences due to his health problems. (R. 46).

Claimant was diagnosed with fibromyalgia in April of 2005, and testified that his symptoms include muscle spasms in his hands, arms, back, legs, and feet, sharp or shooting pain, dull or pulsating pain, weakness in his limbs, and numbness. *Id.* Claimant experiences constant pain on a daily basis, which he rated as anywhere from seven to nine out of ten (with ten being the worst) when he is taking his medication, and as a ten without medication. (R. 47). Claimant currently takes Lyrica, Flexeril, and ibuprofen for his fibromyalgia, and experiences the following side effects: diarrhea, nausea, and occasional blurred vision and weakness. *Id.* Claimant has discussed these side effects with his doctor, who adjusted Claimant's dosage but advised Claimant that he could not discontinue those medications. *Id.* Due to his fibromyalgia, Claimant can sit for 10 to 15 minutes at a time before needing to get up, stand for 10 to 15 minutes before needing to sit, lift approximately 10 pounds, and walk five to 10 yards before needing to sit down. (R. 48-49). Claimant does not use a cane to walk. (R. 49). Claimant experiences a burning sensation between his shoulder blades, weakness in his arms and hands, and spasms in his arms and hands if he extends them, for example when he tries to scratch his back. (R. 49-50). Claimant cannot raise his arms over his head without problems, and has trouble grasping or moving objects because he will have spasms in his hands or weakness, causing him to drop whatever he is trying to move. (R. 50). In addition to taking his medication, Claimant tries to avoid stressful situations to relieve his pain. *Id.* During the day,

6

Claimant sits propped up with pillows to support his lower back, but mainly stays laying down. (R. 50-51). Claimant has to shift from side to side because of hip problems, and due to his back pain lays on his stomach or uses pillows to support his lower back. (R. 51). Claimant still has a driver's license, but testified that his brother-in-law drove to the hearing. (R. 42). Claimant drives short distances occasionally, such as to the store, but testified that he has trouble driving because of his medications, problems concentrating, problems sitting still, and muscle spasms. *Id.* During the 25-mile drive to the hearing. Claimant had to adjust his seat and shift positions. *Id.*

Claimant also suffers from depression, for which he takes Cymbalta. (R. 47, 51). Claimant has mood swings, times when he "doesn't want to be bothered with anyone," and times when he isolates himself. (R. 51). Claimant will occasionally drive to the store to get groceries, but he testified that he tries to take someone else with him to carry and lift the groceries. *Id.* Depending on his mood, sometimes Claimant has difficulty dealing with the general public. *Id.* Claimant was treated by Dr. Phillips for depression in 2010 for a couple of sessions, but could not continue treatment due to the $75 co-pay. (R. 52). Claimant testified that the Cymbalta helps with his depression. *Id.* Before moving in with his brother, Claimant received some counseling from a free clinic about ways to relax, avoid self-harm, and avoid bottling up his feelings. *Id.* Claimant testified that he tries to practice those techniques. *Id.*

On the advice of his treating physician, Claimant has tried physical therapy to help with his fibromyalgia. (R. 53). Land therapy agitated his pain, but pool therapy was helpful. *Id.* Claimant testified, however, that his pain was alleviated while he was in the pool, but after therapy his muscles would tighten again and he would still be in pain. *Id.* Claimant has also tried at-home remedies, including hot showers, heating pads, surface rubs, and pain patches. *Id.* Claimant has difficulty

7

dressing and bathing, and occasionally has help from his brother. *Id.* Claimant's sister-in-law prepares his meals, although Claimant can use the microwave. (R. 53-54). Claimant tries to make his bed and occasionally tries to wash a dish, but he has trouble standing and bending over the sink. (R. 54). Claimant spends his day going from his bed to his chair, listening to music and watching television. *Id.* When he feels able, he tries to do the exercises recommended by his doctor. *Id.* Claimant does not read because he does not like to read and he has difficulty with reading comprehension. *Id.* Claimant rarely engages in social activities outside of his home, but did go to church a couple of weeks before the hearing. (R. 54-55).

After prompting from the ALJ, Claimant testified about his condition from September 10, 2008 until December 31, 2010. (R. 55-56). Claimant stated that his condition has worsened since 2008, as far as his limitations with walking, standing, personal hygiene, and driving. (R. 56). During the time period at issue, Claimant estimated he could sit for 20 to 25 minutes, stand for 25 minutes, and lift no more than 10 pounds. (R. 56-57). During that period, he could drive two or three times a week, and could drive for longer periods of time. (R. 57). Claimant's pain was anywhere from a four to eight out of ten when he was taking his medication. (R. 57-58). Claimant believes his condition has worsened because of continued disc deterioration, muscle weakness, stress, tension, and the progression of his fibromyalgia. (R. 58).

## C.    Vocational Expert's Testimony at the Administrative Hearing

Rochelle Renee Evans testified as a VE at the administrative hearing. (R. 59-68). After the VE's testimony regarding Claimant's past work experience (R. 59-60), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and asked whether the individual could perform Claimant's past relevant work assuming the

8

individual has the physical capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, can stand, walk, and sit with normal breaks for six hours in an eight-hour workday, can frequently climb stairs, can occasionally climb ladders, ropes, or scaffolding, stoop, and crouch, and can frequently balance. (R. 60). This individual can also understand, remember, and carry out short, simple instructions for two hours at a time for eight hours a day in a low-stress, non-production rate oriented job, cannot work in close proximity to coworkers, and cannot perform work in direct contact with the public. *Id.* The VE responded that such an individual could not perform Claimant's past relevant work, but opined that the individual could perform the following jobs: marker, DOT # 209.587-034, light, SVP-2; router, DOT # 222.587-038, light, SVP-2; and mail clerk, DOT # 209.687-026, light, SVP-2. (R. 61). The ALJ then asked whether a second hypothetical individual could perform Claimant's past relevant work assuming the individual could lift, carry, push, and pull 25 pounds occasionally and 10 pounds frequently, and stand, walk, and sit for six hours in an eight-hour workday with no other limitations. *Id.* The VE responded that the hypothetical individual could perform Claimant's past positions as a program director, children's institution attendant, and teacher's aide. *Id.*

The ALJ then asked whether the first hypothetical individual could perform the identified jobs if all postural activities were limited to occasional frequency, and the VE responded that the hypothetical individual would still be able to perform the identified jobs. (R. 62). The ALJ further limited the first hypothetical individual to lifting and carrying 10 pounds occasionally and five pounds frequently, and the VE responded that such an individual would be able to perform the following sedentary jobs: surveillance system monitor, DOT # 379.367-010, SVP-2; callout operator, DOT # 237.367-014, SVP-2; and addresser, DOT # 209.587.010, SVP-2. (R. 62-65). The VE

9

clarified that these positions did not necessarily require a stand/walk option of six hours in an eight-hour day. (R. 65). The ALJ inquired whether the hypothetical individual could perform the identified jobs if the individual was able to stand and walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday, and the VE responded in the affirmative. *Id.* The ALJ then asked whether a hypothetical individual who can sit and stand for less than 15 minutes at a time for a total of 60 minutes in a workday, lift and carry 10 pounds occasionally and five pounds frequently, never stoop or balance, occasionally bend, drive a motor vehicle, and use bilateral hands and upper extremities for gross manipulation or raising overhead, can occasionally tolerate heat, cold, dust, perfume, or noise exposure, and never work around dangerous equipment could perform any jobs, and the VE responded in the negative. (R. 66).

Counsel for Claimant asked the VE whether performance of the marker, router, and mail clerk jobs would be affected if the hypothetical individual were limited to only occasional gross manipulation of both hands, and the VE responded that those jobs would be precluded. (R. 66-67). Counsel also asked whether the addresser position would be precluded by the same limitation and the VE responded that it would. (R. 67). Counsel then asked about the impact of a hypothetical individual needing to miss work at least three days per month, and the VE responded that all work would be precluded. *Id.* The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles. (R. 67-68).

## V. DISCUSSION

### A. The ALJ's Consideration of the Medical Opinion Evidence

Claimant contends that the ALJ erred in analyzing the medical opinion evidence by failing to give controlling weight to a Medical Source Statement ("MSS") completed by Dr. Eisinger,

10

Claimant's treating physician, dated July 27, 2012. Pl.'s Mem. [DE-20] at 9-16. The Commissioner responds that substantial evidence supports the ALJ's decision not to afford controlling weight to Dr. Eisinger's MSS. Def.'s Mem. [DE-24] at 14-15.

The regulations require the ALJ to consider all evidence in the record when making a disability determination. 20 C.F.R. § 404.1520(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). More weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the

11

physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted). However, "[f]orm reports, in which a physician's only obligation is to check a box or fill in a blank, are entitled to little weight in the adjudicative process." *Whitehead v. Astrue*, No. 2:10-CV-35-BO, 2011 WL 2036694, at *9-10 (E.D.N.C. May 24, 2011) (unpublished) (determining that a check-box form completed by a treating physician was not entitled to controlling weight where it was inconsistent with the physician's own treatment notes and gave no explanation or reasons for the findings, leaving the ALJ unable to determine whether the physician applied the relevant regulatory definitions).

The opinion at issue here is a MSS completed by Dr. Eisinger, Claimant's treating physician, on July 27, 2012. (R. 366-68). Dr. Eisinger noted that Claimant has severe fibromyalgia and widespread muscle spasms and pain, and indicated that Claimant has the following limitations and abilities by circling her answers: Claimant can work no hours per day, can sit and stand for less than 15 minutes at a time for a total of less than 60 minutes in a workday; lift 10 pounds occasionally and

12

five pounds frequently; occasionally bend; never stoop or balance; has no limitations with fine manipulation in either hand or vision; can occasionally perform gross manipulation with both hands and raise each arm over shoulder level; can never work around dangerous equipment; can occasionally operate a motor vehicle and tolerate heat, cold, dust, smoke, fumes, or noise; does not need to elevate legs during an eight-hour workday; and suffers from severe pain. *Id.* Dr. Eisinger also noted that Claimant's impairments are likely to produce good days and bad days; Claimant is likely to be absent from work more than three times a month; and Claimant's condition has existed with the identified limitations since at least July 14, 2010. *Id.* The ALJ specifically considered Dr. Eisinger's MSS, noting the following:

> Further, she submitted a medical source statement on the claimant's behalf dated July 27, 2012, the only statement that included specific functional limitations. (Exhibit B7F). The restrictions she included were for significantly less than a full range of sedentary work since July 14, 2010. . . . These extreme restrictions, including the manipulative limitations, are neither supported by her treating records nor any of the other records. Regardless, the undersigned has considered her opinions, but finds them inconsistent with the evidence as a whole that shows the claimant received minimal and intermittent treatment during the period at issue and consistently reported that his pain level was less with his medications. Furthermore, at many of the office visits, the claimant's primary purpose was to request completion of medical disability forms.
>
> Specifically, the evidence shows that the same dosage of his medication was maintained during the period at issue despite offers to be placed on other medications. This indicates his pain was not as limiting as alleged. Further, even Dr. Eisinger's treatment notes do not document objective findings that would preclude the claimant from performing work at the level outlined in this decision, and on several occasions, Dr. Eisinger recommended the claimant increase his activity and exercise level. This is a persuasive indicator that she considered him capable of exercising, which is inconsistent with a finding that the claimant's functional capacity was so impaired as to render him incapable of performing any substantial gainful activity.

(R. 26-27).

Claimant argues that Dr. Eisinger's treatment notes support her opinion as rendered in the

13

MSS; only one other doctor examined Claimant during the time period at issue and nothing in that treatment note disputes Dr. Eisinger's findings; the ALJ gave great weight to the opinion of a non-examining state agency consultant when that opinion was internally inconsistent; and while Dr. Eisinger recommended that Claimant perform aerobic exercise in addition to gentle stretching and exercises, this does not document that Claimant can perform sustained work-related activities. Pl.'s Mem. [DE-20] at 13-16. Claimant also argues that the ALJ erred by giving only some weight to a prior unfavorable ALJ decision, rendered on September 9, 2008. *Id.* at 14-16.

Substantial evidence supports the ALJ's decision not to afford controlling weight to Dr. Eisinger's opinion where the extreme limitations included in that opinion were not documented in Dr. Eisinger's treatment notes from the time period at issue. The ALJ notes that Claimant "received minimal and intermittent treatment during the period at issue and consistently reported that his pain level was less with his medications. Furthermore, at many of the office visits, the [C]laimant's primary purpose was to request completion of medical disability forms." (R. 27). The ALJ also notes that Claimant was maintained on the same dosage of medication despite Dr. Eisinger's offer to try other medications, and Dr. Eisinger encouraged Claimant to increase his activity and exercise level. *Id.* During the time period at issue, Claimant saw Dr. Eisinger for nine visits, where Claimant generally reported that his medications were helping, and despite some moderate restrictions in Claimant's range of motion and a stiff, antalgic gait, Claimant had good strength in all four limbs. (R. 325-26) (October 15, 2008 treatment note where Claimant says the Cymbalta is helpful); (R. 331-32) (November 21, 2008 treatment note describing Claimant as having full strength in all four limbs); (R. 334-35) (September 3, 2009 treatment note describing Claimant as having good strength in all four limbs and noting that Claimant had not been seen since November 21, 2008 and called

14

with disability paperwork he wanted to have completed); (R. 337-38) (October 1, 2009 treatment note where Claimant notes the medications are helping but declines to try a new medication and Dr. Eisinger encourages Claimant to add aerobic exercise); (R. 340-41) (January 4, 2010 treatment note where Claimant states his medications are helpful, Claimant's distal strength and sensation are intact, and Claimant is performing modified stretches as part of his home exercise routine); (R. 343-44) (January 29, 2010 treatment note where Claimant describes his shoulder pain as improved after a previous injection and notes "he still has pain, but 'it is not like it was,'" Claimant's pain "is not really to the point where he wants to pursue further workup such as MRI," Claimant's medications are helping, and he is performing his home stretching); (R. 322-23) (April 28, 2010 treatment note where Claimant "says he is doing okay overall," is doing his home stretching, has moderate restriction in lumbar and cervical range of motion, good strength in all four limbs, and Dr. Eisinger encourages gentle home stretching and exercise); (R. 325-26) (August 25, 2010 treatment note where Claimant notes his medications are helping, has good strength in all four limbs, and is performing home stretching and gentle exercise); (R. 347-48) (December 15, 2010 treatment note stating Claimant has good strength in all four limbs).[2] Further, Dr. Eisinger consistently notes during the period at issue that Claimant has an active lifestyle or a moderate activity level. (R. 322-23, 325-26, 328-29, 331-32, 334-35, 337-38, 340-41, 343-44, 347-48). Thus, substantial evidence supports the ALJ's determination that Dr. Eisinger's treatment notes do not support the extreme limitations documented in the MSS, particularly where the MSS is a form opinion giving no explanation for her

---

[2] Treatment notes after the time period at issue contain similar notations. (R. 361-62) (March 30, 2011 treatment note describing Claimant's lumbar and cervical range of motion as moderately restricted and noting Claimant had good strength in all four limbs); (R. 355-56) (September 23, 2011 treatment note describing Claimant's cervical range of motion as mildly restricted and noting good strength in all four limbs); (R. 370-73) (November 8, 2012 treatment note describing Claimant as having good strength in all four limbs).

15

findings. *Whitehead*, 2011 WL 2036694, at \*9-10 (determining that a check-box form completed by a treating physician was not entitled to controlling weight where it was inconsistent with the physician's own treatment notes and gave no explanation or reasons for the findings).

Claimant argues that only one other doctor actually examined Claimant during the time period at issue and nothing in those treatment notes contradict Dr. Eisinger's findings as to Claimant's physical limitations. Pl.'s Mem. [DE-20] at 13-14. Dr. Chilukuri examined Claimant on August 25, 2010. (R. 350-51). Dr. Chilukuri's treatment note contains a brief discussion of Claimant's current medications, subjective complaints, social and family history and objective findings, and assessed Claimant with controlled hypertension, fibromyalgia with chronic low back and neck pain, hyperlipidemia, obesity, and notes past impaired glucose tolerance. *Id.* Dr. Chilukuri's treatment notes conclude by noting that Claimant will continue current medications and weight loss efforts, will return for labs in the next few days, and will follow up in four months for another visit. *Id.* Nowhere in this note does Dr. Chilukuri document any restrictions or physical limitations. Further, while this type of evidence may show the consistency or supportability of a medical opinion, *see Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527), Claimant simply points to this treatment note to undercut the ALJ's assessment of Dr. Eisinger's opinion. It is insufficient for the Claimant to point to other record evidence and argue that the ALJ's decision is unfounded, *Frazier v. Astrue*, No. 4:06-CV-254-FL, 2008 WL 138050, at \*14 (E.D.N.C. Jan. 10, 2008) (unpublished), as this invites the court to re-weigh the evidence and substitute its own conclusions for those of the Commissioner, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Claimant also argues that the ALJ erred in giving the greatest weight to the opinion of Dr. Kumar, a non-examining state agency consultant, where that opinion was internally inconsistent.

16

Pl.'s Mem. [DE-20] at 14. Specifically, Claimant argues that Dr. Kumar limited Claimant to light work, but states that Claimant "is limited to medium exertion due to his back injury with decreased [range of motion] and pain" and again states that Claimant is limited to medium exertion "due to complex pain syndrome, fibromyalgia, and low back problems with bulging disk." *Id.*; (R. 114-15). Despite using the phrase "medium exertion," Dr. Kumar limited Claimant to occasionally lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds, which is consistent with light work as defined by the regulations. (R. 114-15); 20 C.F.R. § 404.1567(b) (defining light work). Here, Claimant simply labels Dr. Kumar's opinion as internally inconsistent to argue that the ALJ should have discounted the opinion. However, as discussed above, Dr. Kumar imposed exertional limitations on Claimant that are consistent with light work as defined by the regulations, and those limitations are clear from Dr. Kumar's opinion. Claimant's argument as to internal inconsistency is thus without merit. The regulations allow an ALJ to rely upon the opinion evidence of a non-examining physician when it is consistent with the record evidence. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (explaining the "testimony of a non-examining physician can be relied upon when it is consistent with the record . . . ") (citing *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir. 1971)). Where Claimant has made no argument as to how Dr. Kumar's opinion is unsupported by the record, Claimant is essentially asking the court to re-weigh the evidence and substitute its own conclusion for that of the Commissioner, which the court may not do. *See Hays*, 907 F.2d at 1456.

Claimant appears to argue that the ALJ erred in affording only some weight to the Claimant's prior unfavorable Social Security decision, rendered on September 9, 2008. Pl.'s Mem. [DE-20] at 14. In discussing the prior unfavorable decision, the ALJ stated the following:

the undersigned acknowledges the previous Administrative Law Judge (ALJ)

17

decision found that the claimant's fibromyalgia and complex pain syndrome were "severe" impairments and that the claimant retained the [RFC] to stand and walk for six hours and sit for six hours in an eight-hour workday; lift, carry, push and pull twenty-five pounds occasionally and ten pounds frequently. (Exhibit B1A). The ALJ also found that he was unable to perform his past relevant work, and that, based on the Medical-Vocational Guidelines, the claimant retained the capacity to make an adjustment to work which exists in significant numbers in the national economy.

The undersigned has considered the findings of this decision in accordance with Social Security Acquiescence Ruling 00-1(4) and *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999). The undersigned has given some weight to the exertional limitations as set forth in the prior ALJ's decision, as they are consistent with the majority of the medical evidence of record. However, the undersigned also finds that during the relevant time period at issue in this proceeding, the claimant has a "severe" mental impairment that requires nonexertional limitations as outlined herein. Therefore, the undersigned has given the prior ALJ's decision little weight in this regard.

(R. 25). Claimant makes no argument, however, as to how the ALJ erred in giving the restrictions

outlined in the previous unfavorable decision only some weight. To the extent that Claimant's

memorandum can be read to argue that the ALJ erred in giving some weight to the previous

unfavorable decision where that decision is contradicted by the MSS rendered by Dr. Eisinger,

Claimant's argument is without merit as substantial evidence supports the ALJ's decision not to

afford controlling weight to Dr. Eisinger's MSS. The court "must defer to the ALJ's assignments

of weight unless they are not supported by substantial evidence." *Dunn v. Colvin*, 607 F. App'x 264,

271 (4th Cir. 2015) (unpublished) (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Where a treating physician's opinion is inconsistent with her own treatment notes, the ALJ may give

the opinion limited weight. *Id.* at 269 (citing *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014));

*Craig*, 76 F.3d at 590. Although there is some evidence in the record which would support Dr.

Eisinger's MSS, such as her treatment notes documenting Claimant's stiff and antalgic gait, there

is more than a "scintilla of evidence" supporting the ALJ's decision to discount Dr. Eisinger's

18

opinion. *Dunn*, 607 F. App'x at 271 (concluding the ALJ did not err in affording limited weight to a treating source opinion where "there is more than a 'scintilla of evidence' in the record supporting the ALJ's conclusion that [the physician's] opinion is incongruent with both his own treatment notes and some of the other medical evidence in the record."). Accordingly, the ALJ did not err in evaluating the opinion evidence, specifically the MSS completed by Dr. Eisinger. And to the extent that Claimant argues the resulting RFC is unsupported by substantial evidence based on an error in considering Dr. Eisinger's opinion, this argument is also without merit.

## B.    The ALJ's Credibility Analysis

Claimant contends that the ALJ erred in finding Claimant less than fully credible, because the ALJ penalized Claimant for not being able to afford consistent treatment and erroneously found that Claimant's medication regimen did not change during the period at issue. Pl.'s Mem. [DE-20] at 16-18. In response, the Commissioner argues that substantial evidence supports the ALJ's decision to find Claimant less than fully credible. Def.'s Mem. [DE-24] at 11-14.

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*,

19

453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate

"the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability

to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective

medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical

evidence may not capture the full extent of a claimant's symptoms, so where the objective medical

evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the

individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p,

1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant

solely because his or her subjective complaints are not supported by objective medical evidence. *See*

*Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face

value; rather, the ALJ "must make a finding on the credibility of the individual's statements based

on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor*

*v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished)

(finding the ALJ properly considered the entire case record to determine that claimant's subjective

complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26,

2011).

Here, Claimant argues that the ALJ penalized him for being unable to afford more consistent

medical treatment and erroneously found that Claimant remained on the same dose of medication

during the period at issue. Pl.'s Mem. [DE-20] at 16-18. In discussing Claimant's lack of treatment,

the ALJ noted the following:

the claimant's financial situation is not optimal and . . . this has been a factor in his
having been unable to afford additional healthcare. However, on this record, the
undersigned is unable to make a finding that the claimant has exhausted all resources

20

available to individuals who cannot afford medical treatment or medication such as hospitals, clinics, or community agencies. In fact, the claimant did not present to the emergency room or to a clinic in between visits with his orthopedist due to his pain level. Rather, he reported his medication helped and, at times, declined further medical intervention. His medication and dosages remained the same both prior to and after the date last insured. Accordingly, the undersigned finds that the claimant's testimony is not fully credible with respect to the intensity and persistence of his pain and other symptoms.

(R. 28). Claimant misstates the ALJ's findings. Here, the ALJ not only notes that Claimant does not appear to have exhausted all resources available to patients with financial difficulty, but also notes that Claimant's treatment was minimal, conservative, and intermittent. (R. 25-27). As discussed above, during the time period at issue, Claimant only saw Dr. Eisinger nine times over a two-year period and frequently noted that his medications were helping with his pain. *See, e.g.*, (R. 325-26; 337-38; 340-41; 343-44). And despite complaining of severe pain, the ALJ correctly observes that between these visits, Claimant never had to report to an emergency room or other clinic due to his pain levels. (R. 28). Additionally, Claimant declined Dr. Eisinger's suggestion to try other medications and pursue other treatment options. (R. 337-38; 343-44). Claimant saw Dr. Phillips for a psychological evaluation on September 24, 2010, and even though Dr. Phillips recommended Claimant seek treatment at a community health center that would waive Claimant's co-pay, Claimant elected to follow-up with Dr. Phillips. (R. 317-18). However, Claimant reported that he stopped seeing Dr. Phillips due to the cost. (R. 52, 358, 361); *see also* (R. 355) (September 23, 2011 treatment note from Dr. Eisinger noting that Claimant does not want to go back to see Dr. Phillips). Claimant also testified at the hearing that his family helped with his medical bills and he had received some counseling from a free clinic. (R. 44, 52).

Claimant correctly notes that the ALJ erroneously found that Claimant's medication and

21

dosages remained the same during the period at issue, as some dosages and some medications were added. Pl.'s Mem. [DE-20] at 16-18 (citing R. 331, 335, 340). However, as discussed above, Claimant reported during the time period at issue that his Cymbalta helped with his pain and declined Dr. Eisinger's offers to try other medications or other courses of treatment. Additionally, substantial evidence supports the ALJ's decision to find Claimant less than fully credible where he received conservative treatment during the period at issue and the medical attention sought by Claimant is inconsistent with the allegations of severe pain. *Dunn*, 607 F. App'x at 273 ("[T]his Court has long held that it is appropriate for the ALJ to consider the conservative nature of a plaintiff's treatment—among other factors—in judging the credibility of the plaintiff."); *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) ("an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility"). Thus, even disregarding the ALJ's erroneous finding as to the medication and dosages, substantial evidence supports the ALJ's determination that Claimant was less than fully credible and Claimant's argument on this issue is without merit.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-19] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] be ALLOWED and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 2, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the

22

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within **fourteen days** of the filing of the objections.

Submitted, this the 19th day of January 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

23